**COOPERVISION, INC., Plaintiff,**

v.

**CIBA VISION CORPORATION,**
**Defendant.**

**Civil Action No. 2:06–CV–149.**

United States District Court,
E.D. Texas,
Marshall Division.

March 30, 2007.

Adam S. Hoffman, Amir A Naini, David I. Gindler, Douglas NeJaime, Jason G Sheasby, Jonathan Steinsapir, Morgan Chu, and Raj Sardesai of Irell & Manella LLP, Los Angeles, CA, Ben Yorks and Michelle Armond of Irell & Manella—Newport Beach, Newport Beach, CA, Clayton E. Dark, Jr., Lufkin, TX, J. Thad Heartfield of The Heartfield Law Firm, Beaumont, TX, for Plaintiff.

Virgil B. Medlock Jr., Catherine Isabelle Casey Rajwani, Feras Alkasab, Michael D. Hatcher, of Sidley Austin—Dallas, Dallas, TX, Charles W. Goehringer Jr. and Lawrence L. Germer of Germer Bernsen & Gertz, Beaumont, TX, Stephanie P. Koh and Thomas D. Rein of Sidley Austin—Chicago, Chicago, IL, for Defendant.

## ORDER GRANTING MOTION TO AMEND INFRINGEMENT CONTENTIONS

CLARK, District Judge.

Before the court is Plaintiff CooperVision, Inc.'s ("CooperVision") Motion to Amend Infringement Contentions [Doc. # 71]. CooperVision seeks leave to amend its P.R. 3–1 Infringement Contentions to assert two additional independent claims and three additional dependent claims from U.S. Patent No. 6,431,706 ("the '706 patent").

## I. Background

CooperVision filed suit against CIBA Vision Corporation ("CIBA") on April 10, 2006 alleging infringement of five patents. There are two families of patents at issue in this litigation: the Edge Design Patents and the Toric Patents. The Edge Design Patents are U.S. Patent Nos. 6,923,538 ("the '538 patent") and the '706 patent. These patents relate to edge designs for molded contact lenses. The Toric Patents are U.S. Patent Nos. 6,467,903 ("the '903 patent"), 6,971,746 ("the '746 patent") and 6,857,740 ("the '740 patent"), and involve surface topography designs for toric lenses designed to treat astigmatism. CooperVision asserts that CIBA's $O_2$Optix lenses infringe the patents-in-suit.

Pursuant to the court's Scheduling Order, CooperVision timely filed its Infringement Contentions on November 6, 2006, identifying eighty-two (82) claims. As reflected in the court's Amended Scheduling Order signed February 9, 2007, CooperVision agreed to limit the number of total asserted claims to twenty. On February 13, 2007, CooperVision served CIBA with amended infringement claim charts for nine previously unasserted claims in the '706 patent: Claims 1–4, 8–9, 12, 15–16. CooperVision now seeks to amend its P.R. 3–1 Infringement Contentions to add Claims 1, 4, 8, 15 and 16 (collectively, "the new claims") from the '706 patent.

## II. Law

This dispute is governed by the Local Patent Rules.[1] Once again, the court faces the conflict between the necessity for orderly and timely disclosure of necessary information on the one hand, and the natural desire of litigants to attain important tactical advantages by conceding key elements of their case. Over time, the Federal Rules of Civil Procedure have been amended in favor of full and open discovery. See Fed.R.Civ.P. 26 Advisory Committee note (1993 Amendments). The Rules are to be "construed and administered to secure the just, speedy, and inexpensive determination of every action." Fed.R.Civ.P. 1.

Some district courts have recognized that the normal discovery process can be very cumbersome and expensive in a complicated patent case. To balance the competing interests of the parties, these courts have adopted Local Patent Rules and frequently enter special scheduling orders. See Fed.R.Civ.P. 16(c)(6) and (12). This tracks suggestions made in the MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.212.

■ Local Patent Rules are a valid exercise of the court's authority to manage its docket in accordance with the Federal Rules of Civil Procedure. See Fed. R.Civ.P. 83; *O2 Micro International Limited v. Monolithic Power Systems,* 467 F.3d 1355, 1365–66 (Fed.Cir.2006); *Genentech, Inc. v. Amgen, Inc.,* 289 F.3d 761, 774

---

1. The Local Rules were amended on October 27, 2007 and the word "preliminary" was eliminated from all references to infringement contentions and invalidity contentions. The rule change does not substantively affect any of the issues in this case, and the court will refer to the current Local Rules for ease of reference.

(Fed.Cir.2002). The judges of the Eastern District of Texas unanimously adopted the Local Patent Rules. They are posted on the Court's website, and each party was informed in the Order Governing Proceedings that they would apply. The Scheduling Order in this case set deadlines for the parties to complete actions required by the various provisions of the Local Patent Rules.

P.R. 3–1 requires a party alleging infringement to disclose asserted claims and infringement contentions "not later than 10 days after the Initial Case Management Conference...." This disclosure must include "whether each element of each asserted claim is claimed to be literally present or *present under the doctrine of equivalents* in the Accused Instrumentality." P.R. 3–1(d)(emphasis added). This rule, together with P.R. 3–3 requiring disclosure of invalidity contentions, mirror the identically numbered rules of the Northern District of California. They are "designed specifically to 'require parties to crystallize their theories of the case early in the litigation....'" *O2 Micro Intern. Ltd.*, 467 F.3d at 1364 (citations omitted). The patent rules also specifically detail when amended contentions may be served. *See* P.R. 3–6.

CooperVision states that its amended infringement contentions are proper under P.R. 3–6(b),[2] which provides:

Amendment or supplementation of any Infringement Contentions or Invalidity Contentions, other than as expressly permitted in P.R. 3–6(a), may be made only by order of the Court, which shall be entered only upon a showing of good cause.

The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate ·their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 1368860, * 3 (N.D.Cal. June 16, 2004); *see also STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F.Supp.2d 845, 849 (E.D.Tex.2004). One of the goals of the Federal Rules of Procedure and the Local Patent Rules is to speed up the litigation process and make it less expensive. *See Finisar*, 424 F.Supp.2d at 901. A party simply cannot wait until shortly before trial to prepare its case. *Id.* Moreover, the right to amend under P.R. 3–6 is subject to the court's duty to avoid unfairly prejudicing CIBA "through eleventh-hour alterations." *IXYS Corp.*, 2004 WL 1368860, * 1.

█ A court has the inherent power to enforce its scheduling orders and to impose sanctions. Fed.R.Civ.P. 16(f); *see O2 Micro Intern. Ltd.*, 467 F.3d at 1363; *Flaksa v. Little River Marine Const. Co.*, 389 F.2d 885, 887 n. 3 (5th Cir.1968). However, interpretation and enforcement of discovery provisions of the Local Patent Rules should not conflict with, and should harmonize with, the discovery provisions of the Federal Rules of Civil Procedure. *See O2 Micro Intern. Ltd.*, 467 F.3d at 1365. Deciding whether late filed infringement contentions should be excluded is slightly different from deciding whether evidence should be excluded for discovery violations. It is also akin to deciding whether the pleading deadlines of a scheduling order should be extended. Therefore, the court will consider the kinds of factors identified as important in making both types of decisions. *See O2 Micro Intern. Ltd.*, 467

---

**2.** Coopervision has not asserted any of the grounds in P.R. 3–6(a) as a basis for filing amended infringement contentions.

F.3d at 1366; *Finisar*, 424 F.Supp.2d at 899. A non-exclusive list of factors considered by courts includes:

1. The length of the delay and its potential impact on judicial proceedings;

2. The reason for the delay, including whether it was within the reasonable control of the movant;

3. Whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent;

4. The importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of procedure; and

5. The danger of unfair prejudice to the non-movant.

## III. Analysis

*CooperVision's Diligence and Explanation for the Delay*

CooperVision contends that it was unable to assert the new claims because CIBA's rolling production of documents hampered CooperVision's ability to determine whether to assert any additional claims. CIBA argues that CooperVision had the information it needed to assert the new claims back in November 2006, and "a rolling production is reasonable and normal for a case of this type."

The currently asserted claims in the '706 patent, Claims 13 and 14, describe a lens whose surface is formed from a back-surface mold that is the mirror image of the back-surface of the lens. '706 Patent, Col. 9, L. 5–22. The mold is described as having "a concave outer peripheral sur-

face." '706 Patent, Col. 9, L. 15. The two independent claims that CooperVision seeks to assert, Claims 1 and 15, describe a tool with a convex curve used to create a back-surface mold with a concave curve. '706 Patent, Col. 8, L. 8–25; Col. 10, L. 1–10. The dependent claims specify that the concave curve has a radius length of at least about .5 mm (Claims 8 and 16) and that the lens produced using the tool has a rounded edge (Claim 4). '706 Patent, Col. 8, L. 47–50; Col. 10, L. 11–13.

CooperVision's explanation for the delay is reasonable in light of CIBA's actions. By November 28, 2006, the date mandatory disclosures were due, CIBA provided only a list of documents, whereas CooperVision turned over the actual documents underlying its mandatory disclosures. On December 5, 2006, the court ordered CIBA to provide CooperVision with the all the non-privileged, responsive documents that had been collected and sent to CIBA's outside document vendor. CIBA produced these documents on December 8, 2006 in native computer file format, without providing names of the applications necessary to open these files. On January 5, 2007, CIBA produced a Bates-numbered set of documents with over 20,000 pages of new documents that were not previously provided to CooperVision on December 8, 2006. CIBA produced an additional 1,900 files on December 22, 2006 and an additional 69,000 pages of documents on January 25, 2007. Given the delayed production and the size of the production, it is not unreasonable that CooperVision seeks to amend its infringement contentions at this time.

CIBA states that "discussion of CIBA's document production proves nothing because Coopervision has not pointed to a single recently produced document that justifies its failure to timely assert the additional claims of the '706 patent."

CIBA argues that it "produced documents fully describing both the molding of the $O_2$ Optix products ... on December 8, 2006." Contrary to these assertions, in its motion, CooperVision gives a specific example of late-produced documents that gave rise to its new infringement contentions. *See* CooperVision's Motion to Amend, p. 8 [Doc. # 71]. CIBA produced files labeled with a ".PRT" extension[3] but waited until December 22, 2006 to identify the application used to create these files. CooperVision's subsequent review showed that the .PRT files are the design files for the $O_2$Optix lenses. In complex litigation, each party relies heavily on the production of the opposing party to help guide future research. A party that fails to disclose information in a timely manner has little room to complain that the opposing party is tardy. This factor weighs in favor of allowing CooperVision to amend its Infringement Contentions.

*Importance of the New Claims*

CIBA argues that "the new claims overlap and are redundant of claims that [CooperVision] timely asserted." If this is true, CIBA cannot possibly be harmed and the court must wonder why the motion is opposed. However, unlike the claims asserted previously, the new claims do not contain a "rounded outer peripheral edge" limitation. Therefore, the new claims could remove a point of dispute between the parties, namely whether CIBA's accused product contains a "rounded outer peripheral edge," and allow parties to focus on the specific characteristics of the tool used to make the molds for contact lenses. This factor weighs in favor of granting CooperVision's motion for leave to amend.

*Potential Unfair Prejudice to CIBA in Allowing the New Claims*

CIBA has already said the new claims overlap and are redundant. This may be tiresome, but is hardly unfairly prejudicial. CooperVision argues that CIBA would not suffer any potential prejudice by the addition of five claims. CIBA states that it will be prejudiced by having to backtrack and expand its prior art search to cover methods of manufacturing and tools, as opposed to just contact lenses. CIBA claims that it will have to create additional invalidity contentions based upon the new prior art that it finds, and will have to develop non-infringement positions specifically directed at its methods of manufacturing and tools.

Although CooperVision's motion identifies five additional claims, it has informed the court that only four of the claims (1, 4, 8 and 15) will be part of the twenty claims that CooperVision will assert at trial. *See* CooperVision's Limitation of Claims Pursuant to Court Order, [Doc. # 79]. CooperVision has stated that it will not seek any additional discovery from CIBA with respect to these five additional claims, or present any new issues for claim construction. On February 16, 2007, CooperVision's counsel sent a letter to CIBA's counsel offering to shift the P.R. 4–2 claim construction disclosure for all patents in the action from February 26 until April 4 to give CIBA additional time to analyze the issues. CIBA's counsel responded in a letter dated February 19, 2007, stating that "CIBA does not believe it will suffer prejudice by submitting its proposed constructions on February 26." CIBA has been aware of CooperVision's intent to add these additional claims since February 13.

---

**3.** An "extension" is a suffix to the name of a computer file applied to show its format. It is commonly used to infer information about what sort of data might be stored in the file. For example, WordPerfect uses ".wpd" and Microsoft Word uses ".doc". But ".PRT" is not common.

CooperVision has acted with reasonable diligence. The court is not convinced that CIBA will suffer unfair prejudice as a result of CooperVision amending its Infringement Contentions. Unlike many cases in which leave to amend contentions is denied, this request was made months before the claim construction hearing and the deadlines for discovery on claim construction. It does not seem necessary to even consider a continuance.

IT IS THEREFORE ORDERED that CooperVision's Motion to Amend Infringement Contentions [Doc. # 71] is **GRANTED.**